## GEORGE LITZELMAN
## v.
## JOHN HOWELL, use, etc.

1. UNAUTHORIZED SIGNING OF NOTE—RATIFICATION.—Where a person without authority signs another's name to a promissory note, the subsequent assent and ratification by the latter of such signing is equivalent to an original authority and confirms what was originally an unauthorized and illegal act.

2. ESTOPPEL.—Where a son, without authority, signs his father's name to a note, and the latter, by admissions as to its genuineness, or by promises to see that it is paid, induces the holder of it to delay taking steps to collect it from the son until the son has left the State, the father is estopped from afterward denying the execution of the note.

APPEAL from the Circuit Court of Jasper county; the Hon. WILLIAM C. JONES, Judge, presiding. Opinion filed November 24, 1886.

Messrs. GIBSON & JOHNSON, for appellant.

Messrs. HALLEY & HONEY, for appellee.

WILKIN, P. J. This suit was begun before a justice of the peace against appellant and Joe C. Litzelman, by appellee, on a promissory note. Appellant alone was served. He appeared and filed an affidavit denying that he executed the note or in any way authorized the signing his name to it. On the trial the justice of the peace gave judgment against him and he appealed to the circuit court, where the case was tried by a jury, and the judgment being adverse to him, he brings the case here. The errors assigned are the overruling defendant's motion for a new trial, and giving oral instructions to the jury. Under the first assignment of error the only reason for reversal urged is, that the verdict is contrary to the law and evidence.

Although appellant did not execute the note sued upon, yet if it sufficiently appears from the evidence that he as-

sented to and ratified the signing of his name thereto; as is said by the Supreme Court in Hefner v. Vandolah, 62 Ill. 485, "such subsequent assent and ratification would be equivalent to an original authority and confirm what was originally an unauthorized and illegal act." 2 Daniel on Negotiable Instruments, p. 319, Sec. 1351, citing Howard v. Duncan, 3d Laws, 174. Or if, by his admissions as to its genuineness, or promise to pay the note or see that it was paid, he knowingly and designedly induced appellee to delay taking steps to collect it from his son when it could have been collected, until the son left the State, he would be estopped from afterward denying its execution. 2 Daniel on Negotiable Instruments, p. 319, Sec. 1352 ; Hefner v. Dawson, 63 Ill. 403. The case of Hefner v. Vandolah, 57 Ill. 520, relied upon by counsel for appellant, is not in conflict with the authorities cited. In that case it was shown that the admissions that the note was genuine were made by mistake. There was, therefore, no ratification. The evidence failed to show that the holder of the note was, by the admissions or conduct of Hefner, induced to act or delay action to his injury. Hence it was held the doctrine of *estoppel in pais* did not apply. In this case John Howell, appellee, testified, after the note became due he met appellant, and asked him if he was security on the notes sued on and he said he was ; also that he said he would leave word at the house for his son Joe to pay it, and said, "*I will see that it is paid.*" Dr. A. A. Frank testified that in a conversation with appellant he asked him why he told Howell he signed the note, if he did not. He said, " When I told Howell I signed that note I was not under oath." William England and James Kelley, who were present at that conversation, corroborate Frank. It is true that appellant denies that he admitted to Howell that he was security on the note, but in giving his version of the conversation with him, he does say, "I did not know anything about it, *and I just told him I would see that it was paid.*" It also appears from the evidence of both Howell and Frank that they were induced to delay suing on the note by the statement of appellant, and that they could have at that time collected it of Joe Litzelman ; that Joe left in the night and that it was not

until after he had gone that appellant denied that he signed the note and refused to pay it. It also appears from the testimony of Kelley that in the conversation with Frank appellant gave as one of his reasons for the admission to Howell that he " did not have to tell on his son." Appellant alone testified in his own behalf, and giving him the benefit of the most favorable construction of his evidence, he neither admitted nor denied signing the note when the inquiry was made by Howell, assigning as a reason that he " was not bound to report on his boy." While it is true that it was not his duty to become an informer on his son, and the instincts of a parent would plead strongly for the concealment of facts known to him, which, if disclosed, might expose him to a criminal prosecution, yet if he concealed the facts when asked if he was security on the note, and by such concealment intended to lull appellee into security and thus enable his son to escape, thereby working an injury to appellee, he could not, after the son was gone, escape liability on the plea that he did not execute the note. We think the evidence justifies the finding of the jury either upon the theory that there was a ratification of the execution of the note or upon the doctrine of estoppel.

The bill of exceptions shows that the court, by consent of each party, gave oral instructions to the jury. Appellant does not deny that he so consented, but is in the unenviable position of attempting to maintain that the court erred in doing just what he agreed should be done. This he can not do. Dates v. Ball et al., 72 Ill. 112. The judgment of the circuit court is affirmed.

Affirmed.